Peelle, J.,
delivered the opinion of the court:
The claimant, The Chapter of Calvary Cathedral, Sioux Falls, Dakota, is a corporation, which was organized as such under the laws of the Territory of Dakota in the year 1885. As such corporation it prosecutes this suit on a contract entered into on the 1st day of July, 1891, by and between T. J. Morgan, Commissioner of Indian Affairs, for and on behalf of the United States, and John S. Lewis, treasurer of the Cathedral Chapter of Southern Dakotn, of Sioux Falls, South Dakota.
The contract was entered into in the manner stated at the request of Bt. Bev. W. H. Hare, missionary bishop of South Dakota, “to equip, maintain, and manage an industrial boarding school at Springfield, Bonhomme County, S. Dak.,77 and subject to the conditions set forth, in the contract, for the period of twelve months from that date.
The contract was fully performed, under the general management and supervision of Bishop Hare, with the knowledge of the Commissioner of Indian Affairs, as were previous contracts of like tenor, likewise signed, and payments were made therefor to John S. Lewis, treasurer of the Cathedral Chapter of *280 Southern Dakota, of Sioux Falls, S. Dak., as set forth in the findings, except the payment made for the last quarter under the contract sued on, which was to George W. Lewis, treasurer of the claimant corporation, the defendants first taking a bond to idemnify them against any further payment of said sum to John S. Lewis, treasurer, etc., Ms heirs, executors, or administrators, not, however, waiving any right the claimant corporation might have to prosecute an action against the United States to recover the sum so paid to John S. Lewis, treasurer, etc., after notice of his resignation as treasurer of the claimant corporation and the appointment of George W. Lewis as his successor.
On May 14,1892, Bishop Hare addressed to the Commissioner of Indian Affairs a letter, of which the following is a copy:
“MISSIONARY District oe South Dakota,

“Sioux Fails, S. Dale., May 14,1892.

“ Hon. COMMISSIONER OE INDIAN AEEAIRS :
“Sir: I hereby certify that John S. Lewis, late treasurer of the Chapter of Calvary Cathedral, Sioux Falls, in whose name a contract was drawn up for the current year for conducting HopelndianBoardingSchool, Springfield, S. Dak., has resigned, and that George W. Lewis, Sioux Falls, S. Dak., has been appointed in his place.
“Yours, respectfully, “W. H. Hare,

“President of the Chapter of Calvary CathedralP

The letter was received by the Commissioner of Indian Affairs May 19, 1892, but was not received by the Second Auditor of the Treasury Department until August 3,1892, long after the payment had been made to John S. Lewis, treasurer, as set forth in the findings.
On May 20, 1892, after vouchers in due form had been made out in the name of John S. Lewis, treasurer of the Cathedral Chapter, for the two quarters ending March 31,1892, and certified by the Indian agent, as required by the contract, George W. Lewis, treasurer of the claimant corporation, transmitted to the Commissioner of Indian Affairs such vouchers in a letter, of which the following is a copy:
“Sioux Falls, S. Daic., May 20,1892.
. “ Hon. Commissioner oe Indian Affairs,
“ Washington, Ú. C.:
“ Sir : I beg leave to submit herewith original vouchers, -with quarterly reports for tuition, etc., at Hope Indian Boarding *281 School for second quarter and for third quarter, 1892, for which I beg a favorable consideration.
u £ vegret delay in forwarding these documents, which has been caused by a change of officers, the undersigned having succeeded John S. Lewis.
“ Very respectfully, yours,
“Geo. W. Lewis,

uTreas. of the Chapter of Calvary CathedraU

“Bishop Hare begs leave to draw the attention of the honorable Commissioner to the above, and to say that it. would be a great relief to the management of the school if, in view of the past delay, this account could receive prompt attention. The delay has not been occasioned by any delinquency on the part of the school management. “ W. H. Habe,
“ Bishop.11
That letter was received by the Commissioner of Indian Affairs May 24,1892, and by the Second Auditor'of the Treasury Department May 27,1892, and on the following day the Second Auditor certified to the Second Comptroller a balance due John S. Lewis, treasurer, for $2,430, under the contract. The Second Comptroller admitted and certified such balance June 10, 1892, and a Treasury draft for the amount was issued in the name of John S. Lewis, treasurer, etc., and transmitted to him and subsequently paid. John S. Lewis, it appears, failed to account to the claimant corporation for the money thus received, and in consideration thereof assigned his claims and demands against Calvary Church to the claimant corporation, but nothing was collected on such claims, and they are found to be worthless. On May 20, 1892, Bishop Hare wrote to the Commissioner of Indian Affairs a letter, in which he stated substantially that Hope school, at Springfield, S. Dak., was under his general superintendence, and that he was president of the claimant corporation, and that George W. Lewis was the treasurer thereof.
He further says in this letter: “The contract has been made hitherto with the treasurer of the chapter, which is to us a convenient way of transacting the business. The Rev.W. J. Wicks is the principal of the school, and, should the Department prefer that he should be the party of the second part, we should have no objection,” and, further, that he desired a renewal of the contract. This letter was received by the Commissioner of Indian Affairs May 27,1892, but does not appear to have been *282 transmitted to tbe accounting officers of the Treasury Department.
The claimant contends that the contract sued on was made with the claimant corporation by John S. Lewis, as its agent, with its authority, and that it can maintain this action as principal to recover the amount paid to such agent, subsequent to the time of the notice of his resignation as treasurer of the claimant corporation and the appointment of his successor, notwithstanding -the name of the principal was not disclosed in the contract. The defendent contends that the contract was made with John S. Lewis, and that the words u Treasurer of the Cathedral Chapter of Southern Dakota, of Sioux Falls, South Dakota,” following his signature to the contract, are mere words of description, and that therefore the notice given by the claimant to the defendants or their agents concerning its change of treasurers is not sufficient to bind the United States or put them upon inquiry.
The Act of June 2,1862 (12 Stat. L., 411) (now Revised Statutes, sec. 3744), provides:
u It shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior, to cause- and require every contract made by them severally on behalf of the Government, or by their officers under them appointed to make such contracts, to be reduced to writing, and signed by the contracting parties with their names at the end thereof; a copy of which shall be filed by the officer making and signing the contract in the returns office of the Department of the Interior as soon after the contract is made as possible, and within thirty days, together with all bids, offers, and proposals to him made by persons to obtain the same, and with a copy of any advertisement he may have published inviting bids, offers, or proposals for the same. All the copies and papers in relation to each contract shall be attached together by a ribbon and seal, and marked by numbers in regular order, according to the number of papers composing the whole return.”
The same act (now Revised Statutes, 3745) makes it the duty of the officer, before making his return, to affix thereto his affidavit as to the correctness of the copy of such contract and that the papers accompanying the same are all the papers relating to the contract; while the next succeeding section makes it a misdemeanor for such officer to- fail to make such return, unless prevented’ from unavoidable accident or causes not within his control. The returns office, and the clerk provided *283 therefor, as well as his duties, are set forth in the same act (now Bevised Statutes, seotions 512 to 515 inclusive.)
Section 5 of the same act (now Bevised Statutes, section 3747) makes it the duty of the Secretaries of War, Navy, and Interior Departments to furnish every officer appointed by them with authority to make contracts, with a printed letter of instruction, setting forth the duty of such officer, and also to furnish printed forms of contracts in blank, and the affidavit of returns required to be. made-under the act, so that all instruments required to be affixed thereto may be as nearly uniform as possible.
The regulation of the Indian department, issued by the Secretary of the Interior in 1884, section 30, page 14, is as follows:
“ Sec. 30. Contracts executed by the president, secretary, or other officer o'f an incorporated company, must be accompanied by a certificate of the board of directors or executive committee thereof, under seal, that the officer so signing was duly authorized to make contract for and on behalf of the company, and that the act of-such officer in executing the contract is binding upon the company represented by him. The manner of affixing the signature must be as follows: ‘The Moline Wagon Co., by John Doe, vice-president.” (Sec. 12 Ins., 1880.)
While, as to contracts to be signed by an agent, section 33 (supra) provides:
“ Sec. 33. Contracts signed by an agent of a firm, or by one member for another, or by an attorney, are not valid, unless the same be accompanied by a duly executed power of attorney from the party or parties for whom such agent, member, or attorney shall sign (of date even with or prior, except in the case of a general' power of attorney, to the date of the instrument), which power of attorney must set forth specifically the particular purpose for which it was given by describing in full the names of the contracting parties, and the date and object of the contract.” . (Sec. 12 Ins., 1880.)
The act of 1802 (supra) is entitled “An act to prevent and punish frauds on the part of officers intrusted with making of contracts for the Government.” The act in its ’nature is a statute to prevent frauds and perjuries, and its language is mandatory, as was held by this court in Henderson’s Case (4 C. Cls. R., 75,365); Hanold’s Case (5 id., 05); Gill’s Gase (7 id., 522); Jones’s Gase (11 id., 733). In the latter case it was said in substance that the act 1802 (supra) was a statute of frauds, and as clearly so as 29 Charles IÍ; that both acts have the same *284 purpose and are subject to tbe same rules of construction, and that “ written contracts falling witbin the statute of frauds can not be varied by any subsequent agreement of the parties, unless such new agreement is also in writing,” etc. (Swain v. Seamens, 9 Wall., 254, 272.)
These decisions were followed by the decision in Clark’s Case (95 U. S., 539, 541), where it was said concerning the act of 1862:
The Court of Claims has heretofore held the act to be mandatory, and as requiring all contracts made with the defendants named to be in conformity with it. The arguments by which this view has been enforced by the court are of great weight, and, in our judgment, conclusive.”
This decision was followed by the South Boston Iron Company's Case (18 C. Cls. R., 165, 178), which was affirmed by the Supreme Court (118 U. S., 37, 42), wherein the court holds that to bind the United States contracts under the act 1802 must be in writing and signed by the parties.
Since the passage of the act of 1862 (supra), therefore, the doctrine laid down in the Ford Case (21 How. 287) and Ramsdell Case (2 C. Cls. H., 508), to the effect that where a contract is made by an agent the principal may maintain an action thereon in his own name, although such principal is not disclosed in the' contract, is no longer in force as to contracts made with the Government by those officers, for the language of the act of 1862 is mandatory, and requires not only that the contract shall be reduced to writing, but that the same shall be “ signed by the contracting parties, with their names at the end thereof;” and this was expressly so held in Gill’s Case (supra), and the decision in that case was affirmed by the Supreme Court, though without ojúnion. (See 10 C. Cls. It., 150.)
The language of the act leaves no room to doubt the purpose and intention of Congress, i. e., that the names of those contracting with the Government shall be disclosed and signed to the contract at the end thereof, so that the accounting officers will not have to look beyond the contract to ascertain with whom the Government is dealing; and in the absence of fraud, not contended in this case, all matters of negotiation, knowledge, or information concerning the same become merged in the contract, a copy of which is required by the act tobe filed in the returns office as soon thereafter as possible, with an affidavit of the officer making such contract annexed thereto that *285 tbe same is an exact copy, etc. By sucb contract, and tbat alone, tbe accounting officers must be guided in tbe adjustment of accounts arising thereunder, otherwise tbe purpose of tbe act would be defeated.
Tbe contract sued ou was made with John S. Lewis, with bis seal attached thereto, describing himself “Treasurer of tbe Cathedral Chapter of Southern Dakota, Sioux Falls, South Dakota,” both in the body of the contract and following his signature thereto. The descriptive words do not even designate him as treasurer of the claimant corporation, but as treasurer of the religious body or Cathedral Chapter, etc. The latter body is not incorporated, but exists under and by virtue of ecclesiastical law. Whether he became treasurer of the religious body by virtue of being treasurer of the corporation or otherwise does not appear, but it does appear that the claimant was an incorporated body under and by virtue of the laws of the then Territory of Dakota. Notice, from the claimant corporation or its officers, therefore, to the defendants or their agents that the corporation had changed its treasurer, as set forth in the findings, would not be sufficient to put the defendants upon inquiry, as such corporation did not execute the contract nor was it disclosed therein, and the accounting officers, in adjusting accounts thereunder, were not bound to look beyond the contract. Had the contract been executed by the claimant corporation, as provided by the act of 1862 and the regulation thereunder, then the claimant’s notice to the accounting officers might have been sufficient to put the defendants upon inquiry, and made them chargeable with negligence in paying a former treasurer; but the contract not having been executed by the claimant corporation .or by John S. Lewis as its agent, the question is not before us and we need not pass upon it further.
Those making contracts with the Government are supposed to know the law and the regulations with reference thereto, and must see to it that contracts are made in conformity therewith (Clarks Case, supra). Where one contracts for another as agent, the authority therefor must be shown, since the act 1862, by a duly executed power of attorney, setting forth specifically the purpose for which it is given and describing in full the name of the party for whom such agent contracts, as required by the regulation set out, to the end that the contract *286 shall disclose the name of the party for whose benefit the same is made, so that the accounting officers may know, by reference to the contract, with whom they are to deal.
That the contract was executed in the manner stated, at the solicitation of Bishop Hare, and the same performed under liis general supervision and management, with the knowledge of the Commissioner of Indian Affairs, does not alter or in any way modify the contract, for it was immaterial to the Government at whose instance the contract was made ■ or who performed it, so that it was performed as provided therein ; and, furthermore, there is nothing in the contract showing that it was procured to be executed at the request of Bishop Hare, or that he was to superintend the performance thereof.
The contract was completed, both in its execution and performance, by both parties thereto, so that no question arises on quantum, meruit. The question arises, not because the money due under the contract was not paid, but because, as claimant contends, the money was paid to the wrong party, and that contention is based on a notice given to the agents pf the Government that the contracting party, John S. Lewis, had resigned his office as treasurer of the claimant corporation, which was not disclosed in tho contract, and that George W. Lewis had been appointed in his stead.
Whatever arrangement or understanding there may have been between John S. Lewis and the claimant corporation concerning the money coming into his hands under the contract was a'matter between them, about which nothing was disclosed in the contract. John S. Lewis obligated himself “to equip, maintain, and manage an industrial boarding school at Springfield, Bonhomme County, South Dakota, during twelve (12) months, commencing July 1,1891,” for a certain number of Indian pupils, for which he was to receive “ $27 per quarter as compensation for every pupil clothed, fed, lodged, cared for, and taught, * * * to be computed upon the average attendance of pupils.” The contract .did not obligate him to do the work in person, but to provide a sufficient number of employés to conduct it to the satisfaction of the defendants and to see that the contract was carried out, which was done, and the compensation therein provided for was paid.
So far as the findings show, the defendants had no knowledge that the claimant corporation had any interest .in the contract *287 in any way until the receipt of tbe letter of Bishop Hare by the Commissioner of Indian Affairs, May 14, 1S92, in which he certified that John S. Lewis, treasurer of “the Chapter of Calvary Cathedral, Sioux Falls, in whose name a contract was drawn,” etc., had resigned, and that George W. Lewis had been appointed in his place. But the notice or certificate, if it had been lodged with the accounting officers, was not sufficient to have put the defendants upon inquiry, as they had no such contract with the claimant corporation, nor with John S. Lewis as its agent or treasurer, but did have with John S. Lewis, who described himself as treasurer of the Cathedral Chapter, etc. The defendants were not informed that John S. Lewis was neglecting in any way to comply with his contract. On the contrary, a few days later, viz, May 20,1892, George W. Lewis wrote to the Commissioner of Indian Affairs, inclosing duly certified vouchers in the name of John S. Lewis, treasurer of the Cathedral Chapter, etc., for the-two quarters ending March 31, 1892, as required by the contract; in which letter Bishop Hare, in speaking of the delaj^ in forwarding vouchers, says, “the delay has not been occasioned by any delinquency on the part of the school management;” hence the notice which the defendants did receive contained no information that John S. Lewis had been acting in bad faith with,the claimant corporation or that he had been derelict in his duty to the defendants. The claimant contends that the defendants recognized the claimant corporation in paying to George W. Lewis, treasurer thereof, the money due for the last quarter under the contract, but the defendants were indemnified by bond, as set forth in the finding, before making such payment, and this we think is a sufficient answer to that contention.
We have not deemed it necessary to consider the difference between contracts under seal, such as the one sued on, and those not under seal, since the contract must be construed with reference to the act of 1862, the regulations issued in conformity therewith, and the adjudications thereunder. Following the decisions heretofore cited, we must hold that the contract was not executed by the claimant corporation, nor by t John S. Lewis as its agent or attorney, but was executed by, John S. Lewis individually, as his contract, and that the words “Treasurer of the Cathedral Chapter of Southern Dakota Sioux Falls South Dakota,” are mere words of description; *288 and tbis being so, it follows that the notice given by the claimant corporation and forwarded to the accounting officers of the Treasury Department, to whom alone notice in such cases should be given to affect payment, was not sufficient to bind the defendants or put them upon inquiry, though received before the accounts of John S. Lewis, treasurer, etc, were adjusted.
The claimant has cited in support of its contention the case of Post v. Pearson (108 U. S., 418), and the authorities therein cited in 101 U. S., 392; 105 U. S., 416, and 132 Moss, 152; and also Mechem on Agency, secs. 769, 773; but these all relate to contracts between individuals or corporations and to the law of agency in respect to the right of a principal to maintain an action in his own name on a contract made with his agent, though not disclosed, after he has interposed and given notice of his claim, etc.
None of the authorities cited have any reference to contracts made with the G-overnment, and they are not, therefore, applicable since the act 1862. Gill’s Case (supra).
For the reasons given the petition is dismissed.