Caiupbell, Chief Justice,
delivered the opinion of the court.
In the act of July ¿5, 1912, 37 Stat., 201, 209, being what is called the rivers and harbors act, there is, among other provisions occurring therein, the following:
“Improving channel from Clearwater Harbor through Boca Ceiga Bay to Tampa Bay, Florida: Completing improvement and for maintenance, $20,000.
Under date of January 21, 1913, the Hillsboro Dredging Co. entered into a contract with Capt. Slattery, of the Corps of Engineers, United States Army, representing the Government, a copy of which is attached to the petition.
The contract provides that the contractor shall furnish the necessary plant, labor, and material required for a vigorous prosecution of the work of dredging and rock removal in channel from Clearwater Harbor to Tampa Bay, Fla., and do the work at the localities set forth and in the manner described in the specifications, which were made a part of the contract.
Payment was to be made to the contractor at the following rates:
For dredging in Sections II and J, 15J cents per cubic yard.
For dredging in Sections K, L, M, and P, $1.65 per cubic yard.
*200 In the detailed specifications (section 17), the quantities in the different sections were estimated, and in section 32 it is said:
“ The total estimated quantity of material to be removed to complete the work to be done as stated in paragraph 17 is 12,900 cubic yards, place measurement, in Sections II and J, and 10,144 cubic yards, place measurement, in Sections K, L. M, and P, of which latter amount 5,239 cubic yards is ledge rock. These amounts will be used as a basis in canvassing bids. Within the limits of available funds the United States reserves the right to require the removal of such yardage as will complete the work described in paragraphs 17 and 19, be it more or less than the quantity above estimated, and final payment will not be made until the work is so completed.”
The dredging company did work which, at the unit price mentioned in the contract, exceeded the amount of the appropriation mentioned, and also an additional appropriation of $3,000 made for maintenance by the act of March 3,1913, 37 Stats., 809. In other words, according to the findings of fact, the contractor removed a total of 31,121.39 cubic yards, amounting, at the contract price, to $25,032.31. A part of the appropriation was used for superintendence and office expenses, and the balance of the two appropriations was paid to the contractor. That left a balance of $3,046.44, for which suit is brought.
It is true that the contractor was subsequently paid the sum of $3,046.44. The circumstances of this last payment are shown by the findings to be that Congress made a lump-sum appropriation for rivers and harbors work, to be expended under the direction of the Secretary of War and the supervision of the Chief of Engineers, 38 Stat., 725, and out of this lump-sum appropriation $12,000 was allotted by the Secretary, upon the recommendation of the Chief of Engineers, to the work of Clearwater Harbor.
The contractor in whose interest this suit is brought had no connection with the work to be done under this allotment, his connection with the work having ceased at the time his operations were suspended, as stated. Out of this subsequent appropriation and allotment the contractor was paid said sum of $3,046.44. This payment being held to have been improperly made from that fund, and demand having been *201 made on the contractor for its refund, the amount of it was, with the consent of the contractor, although he also entered a formal protest, deducted from what was due him under a different contract, having no connection with the work in question, thus leaving the situation as if he had not been paid at all the sum for which suit is brought.
Whether he can recover or not depends upon the right of the parties to contract for the doing of the work in question in excess of the amount or amounts appropriated therefor by the acts of Congress.
As above stated, the first appropriation is for “completing improvement and for maintenance.” By a subsequent provision in the act (section 8) the Secretary of War, in his discretion, on the recommendation of the Chief of Engineers, is authorized to apply the funds appropriated for the completion of a specific work “to the prosecution of such work,” in the event the appropriation shall prove insufficient for its completion. This provision is plainly intended to enable the officers to prosecute the work, to the extent of the appropriation, which might not be sufficient to enable them to have it completed, and without this provision the right to contract would be limited to a completed improvement. 4 Op. Atty. Gen., 600.
Sections 3732, 3733, and 3679, Revised Statutes, may be read together in this connection. The object of their enactment was to prevent executive officers from involving the Government in liabilities beyond those authorized by Congress. 21 Op. Atty. Gen., 248.
It is provided by sections 3732 and 3733 as follows:
“ Sec. 3732. No contract or purchase on behalf of the United States shall be made, unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year.
“ Sec. 3733. No contract shall be entered into for the erection, repair, or furnishing of any public building, or for any public improvement which shall bind the Government to pay a larger sum of money than the amount in the Treasury appropriated for the specific purpose.”
*202 A provision in the act of June 30, 1906, cbap. 3914, sec. 9, 34 Stat., 764, is as follows:
“No act of Congress hereafter passed shall be construed to make an appropriation out of the Treasury of the United States, or to authorize the execution of a contract involving the payment of money in excess of appropriations made by law, unless such act shall in specific terms declare an appropriation to be made or that a contract may be executed.”
In making a contract authorized by the act of 1912, the parties must be held to have had notice of the law under which they contracted. Its terms, as well as its limitations, are to be read into the contract. The language of Judge Richardson in McCollum’s Case, 17 C. Cls., 92, 103, is apposite :
“ In every contract, by lease or otherwise, with any public officer all laws applicable to such contract, as to its extent, operation, and the authority for making it, must be considered as stamped thereon and as forming part of the same.”
See also Sanger & Moody Case, 40 C. Cls., 47; San Francisco Bridge Co. Case, 209 Fed., 135.
In addition, however, to this rule of law, the contract, in the instant case, carried, on its face, notice to the contractor that the work was not to exceed the limits of the appropriation. This appears from section 32 above quoted, the language being “ within the limits of available funds,” etc.
Unquestionably, where there is a liability on the part of the Government, the failure of Congress to appropriate for its payment does not avoid or discharge the obligation. This has been repeatedly recognized by this court. Collins Case, 15 C. Cls., 22, 35.
“But where an alleged liability rests wholly upon the authority of an appropriation they must stand and fall together so that when the latter is exceeded, the former is at an end, to be revived, if at all, only by subsequent legislation by Congress.” Shipman’s Case, 18 C. Cls., 138, 147.
In the rivers and harbors act there are a large number of items, some calling for maintenance, others for continuing improvement, and some for completing improvement, and others making special provisions. When Congress made an appropriation for completing the work, followed by a pro *203 vision that the work could be prosecuted to the extent of the appropriation, in case its completion could not be secured, it is plain that the authority to contract was intended to be limited. Unless the appropriation limited the right of the officer to charge the Government, it is difficult to see why the amount should be stated; and it is not to be presumed that in an act carrying hundreds of items, such as a rivers and harbors act, Congress intended to leave it to the discretion of the officers, or the judgment of contractors, to determine whether more work should be done than there was money to pay for, or to impose liabilities upon the Government beyond the amounts appropriated.
“Were such statutory provisions to be disregarded, and were judgment to be given whenever a claimant shall prove that he has -done work or rendered service under the direction of an executive officer, it would enable the executive branch of the Government, with the aid of this court, to annul a law of Congress, and to throw down any limitation which Congress might impose upon the cost of our public works.” Per Judge Nott, Curtis v. United States, 2 C. Cls., 144, 152.
There was no specific authority granted by Congress to malm a contract involving an amount beyond that appropriated, and therefore to say that the contract was one ' authorized by law would not fully express the fact, because what was authorized was a contract for completing the work within a definitely stated appropriation, or a contract for prosecuting the work to the extent the appropriation would allow. This must have been the intention of the act, because Congress not only carefully limited the sum to be expended for completing the improvement and maintenance, but it deemed it necessary to make special provision for prosecuting the work in the event a contract to complete it was not feasible. The latter provision is entirely superfluous if the parties could bind the Government without it.
The act of 1906 may be considered in this connection as containing at least a legislative interpretation of the acts making appropriations for public works.
We have not overlooked a separate claim for $1,551.00 for certain blasting, but what has been said of the larger item applies to this claim also.
*204 Our conclusion is that the plaintiff is not entitled to be paid for work done in excess of the authorized appropriation and that his petition should be dismissed. San Francisco Bridge Company v. United States, 209 Fed., 135.
And it is so ordered.
Graham, Judge, and DowNey, Judge, concur.