Campbell, Chief Justice,
delivered the opinion of the court:
During the years 1905 and 1906 the claimant and defendants entered into several contracts whereby claimant agreed to furnish and deliver certain materials to defendants at Mare Island, Cal., for use at their navy yard by a day certain named in each contract and for an agreed compensation. Each of the contracts contained a stipulation as follows:
“ It is further covenanted and agreed, as aforesaid, that if the party of the first part shall fail to deliver any or all of the articles or materials, or to perform any or all of the services herein contracted for, in conformity with the conditions and requirements of this contract, the party of the second part shall make deductions as follows from the contract price of all supplies not satisfactorily delivered or services not satisfactorily performed by the last day of the time fixed therefor by this contract, viz:
“Up to and including ten thousand dollars ($10,000) in value at contract prices at the rate of one-tenth of one per cent, and above ten thousand dollars ($10,000) at the rate of one-twentieth of one per cent for each day’s delay until *330 satisfactory delivery or performance shall have been made, or until such time as the party of the second part may procure the same, as hereinafter provided, rejection of deliveries or performance not to be considered as waiving deductions. In case the deductions to be made hereunder should equal three per cent of the stipulated value of the articles or materials not so delivered or services not so performed, this contract may, at the option of the bureau, be canceled and the party of the first part barred from competition for the .future contracts: Provided, That when delays on account of which deductions may be made or this contract canceled are caused by strikes, riots, fire, or other disaster, or delay in transit or delivery on the part of the transportation companies, or if the Government has suffered no damage or inconvenience on account of the delay, such delays may, in the discretion of the bureau, be accepted as sufficient cause for waiving such deductions or cancellation as herein provided.”
There were delays in deliveries of the materials specified in some of the contracts, and the Government paid the contract prices except as follows:
From contract No. 7041, dated June 27, 1905, there was deducted on February 2, 1906, the sum of $8; from contract No. 229, dated June 9,1905, the sum of $27.46 was deducted on April 9, 1906; and from contract No. 5421, dated February 28, 1905, there was deducted the sum of $94.08 on August 25, 1906, making a total of $129.54, for which suit is brought.
The amounts deducted were computed in accordance with the terms of the contracts, and these, with the exception of dates, amounts, and names, were identical in form with the contract construed by this court in Crane Co. v. United States, 46 C. Cls., 343. Defendants demur upon the ground that the petition does not state a cause of action.
Whatever may be the rule in other jurisdictions, it should be considered as settled for this court by the Supreme Court in United States v. South Bethlehem Steel Co., 205 U. S., 105, following Sun Printing & Publ. Assn. v. Moore, 183 U. S., 642, (where the authorities are collated and reviewed) that parties may stipulate for liquidated damages and enforce the stipulation, and the underlying principle in these cases is that parties may make their own contracts, and that the province of a court of law is limited to their *331 construction and, where there is no illegality or vitiating fraud in the agreement, to its enforcement according to its terms.
“A court of law possesses no dispensing powers; it can not inquire whether the parties have acted wisely or rashly in respect to any stipulation they may have thought proper to introduce into their agreements. If they are competent to contract within the prudential rules the law has fixed as to parties, and there has been no fraud, circumvention, or illegality in the case, the court is bound to enforce the agreement.” Per Nelson, C. J., in Dakin v. Williams, 17 Wend., 447, quoted in Sun Printing & Publ. Assn. v. Moore, supra.
We do not consider the question of the effect of the payment in full and receipt therefor'which are urged in the brief, because it does not sufficiently appear from the petition that such payment was made or receipt given, and upon demurrer we can consider only the averments of the petition, which so far as they are well pleaded are taken for the purposes of demurrer to be admitted.
The contention of the claimant is that the paragraph from the contract above quoted provides for a penalty and not for liquidated damages, and his argument is (1) that the proviso in said paragraph gives to an official a discretion or power to remit or release a claim of the Government which it is not allowable by law that he do; (2) that the power to release the damages so given by the paragraph is inconsistent with an agreement for liquidated damages, which, it is argued, must become fixed by the terms of the agreement, and therefore an asset of the Government as soon as they accrue, which may not be remitted nor released, and that therefore the defendants are remitted to a proof of actual damages, if any.
If a dealer A should agree to sell to B and the latter agree to purchase at the agreed price of $100 some building material to be delivered on January 1 and both agree that if it be not delivered until January 15 the price should be one-half of 1 per cent of said price less, and if not delivered until February 1 the price should be 1 per cent of the said price less, and the material be not delivered until February 1, would B owe A $100 or $99?. And if there were added to *332 the agreement a stipulation that if B’s architect should decide that B had not been inconvenienced or damaged by the delay in delivery after January 1, then B should pay the original price of $100, would there be anything illegal or contrary to public policy in the agreement? It would perhaps be conceded that if A brought suit claiming $100 and show he had not made delivery until February 1, he would be required to aver that B’s architect had in fact decided that the delayed delivery had not inconvenienced or damaged B before his complaint would be held good as to the $1, as against a demurrer directed to that point.
We may not state the case before us as simply as the sup-posititious one just mentioned, because the discussion of it leads into the maze of decisions relative to liquidated damages and penalties; and because of the suggestions that a Government official can not release nor remit a claim due the Government we should not by. ignoring it leave an impression that its force is not recognized. Aside from, that feature, the principle which controls the illustration applies to this case. And that principle is that where the parties have made a valid contract, it is enforceable by a court of law as made.
The injection of the equitable doctrine as to forfeitures into constructions of contracts by courts of law has contributed no doubt to the divergent views of the courts in' ascertaining whether a contract provides for liquidated damages or for a penalty. It is of course conceded that where it provides a penalty the parties must show actual damages. The Supreme Court has laid down the rules for our guidance in these cases and we must adopt them here. United States v. Bethlehem Steel Co., 205 U. S., 105; Sun Print'g & Pub. Assn. v. Moore, 183 U. S., 669. See also Phoenix Iron Co. case, 39 C. Cls., 526; Barlow case, 35 ib., 514; S. C., 184 U. S., 123; Crane Co. case, 46 C. Cls., 343.
Referring to the case of Sim Printing & Publishing Association v. Moore, it was said: “ The principle decided in that case is much like the contention of the Government herein. The question always is, What did the parties intend by the language used ? When such an intention is ascertained it is ordinarily the duty of the court to carry it out.” Beth *333 lehem Steel Co. case, 205 U. S., 119. In the former case Mr. Justice White, now the Chief Justice, declares that the contention embodying the conception of the doctrine of penalties and liquidated damages expressed in the phrase “ where actual damages can be assessed from testimony” the court must disregard any stipulation fixing the amount and require proof of the actual damages, to be a doctrine which “is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and it is not sanctioned by the decisions of this court” (p. 660). Again (p. 661) : “ On the contrary, this court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them and that whether a particular stipulation to pay a sum of money is to be treated as a penalty or as an agreed ascertainment of damages, is to be determined by the contract, fairly construed, it being the duty of the court always where the damages are uncertain and have been liquidated by an agreement to enforce the contract.” And again (p. 672) : “ It may, we think, fairly be stated that when a claimed disproportion has been asserted in actions at law, it has usually been an excessive disproportion between the stipulated sum and the possible damages resulting from a trivial breach apparent on the face of the contract, and the question of disproportion has been simply an element entering into the consideration of the question of what was the intent of the parties, whether tona ■fide to fix the damages or to stipulate the payment of an arbitrary sum as a penalty by way of security.”
Applying these rules to the contract before us, we find no great disproportion between the amounts stipulated and the possible damages, apparent upon the face of the instrument, and that in the case of these contracts the damages are of uncertain nature is not to be denied. The parties use neither the word “penalty” nor the words “liquidated damages,” but they do declare that in case of delay in delivery at the stipulated time there shall be deducted- for each day’s delay an am mint, equal to one-tenth of 1 per cent of the contract price, where the price is $10,000 or less, and one-twentieth of 1 per cent where the contract price exceeds $10,000. *334 Under the first provision (under which this case arises) there must have been 10 days’ delay before as much as 1 per cent of the contract price could be deducted, and correspondingly for 30 days’ delay only 3 per cent of the price can be taken off. This basis of ascertaining the damages, if we are to treat it as such, does not appear to be unreasonable or oppressive. It indicates, we think, that the parties had in mind the inherent difficulty of proving actual damages and the differences that might arise between the parties in making settlements if there were delays in delivery. The representatives of the Government on the one hand could reason that it was desirable to have a provision in the contract which would render unnecessary any differences in settlement; while the contractor on the other hand could reason that such a course was preferable, because if for no other reason it would eliminate the delays incident to lawsuits brought to secure settlements. Both parties realized that damages for delay would be of -uncertain ascertainment, expensive, and provable largely if not entirely by parol testimony. In bidding for the right to furnish the material the contractor' could, to an extent, figures upon the contingency of delay and its probable duration and make his bid accordingly. We may assume, probably, that his bid left some margin of profit and the basis fixed upon was not unreasonable in that regard. The form of contract here is the same as that under review in the Crane Co. case, where shipments to the Canal Zone were involved. Like considerations are applicable here, and we think it clear that the parties intentionally contracted with reference to the deductions provided for as liquidated damages.
The agreement of the parties, as shown above, may be rendered as though it declared that the said deductions may be made except in case of delays “ caused by strikes, riots, fire, or other disaster or delays in transit or delivery by transportation companies,” or if the Government has suffered no damage or inconvenience by reason of the delay such delays may, in the discretion of the bureau, be sufficient cause for waiving the deductions or cancellation. Stated thus, there could be no question of the right to the deductions unless the discretion vested in the “ bureau ” affects the sitúa- *335 iton and destroys the right. But the claimant insists that the proviso is not limited as we have rendered it, but that the discretion given the bureau permeates all the exceptions and none of them is ex proprio vigore effective as exceptions. Considering this view, there is certainly no reason, good in law, why a party may not contract to make delivery at a specified time regardless of strikes, riots, fire, or other disaster, or delays in transportation, because it is not impossible for delivery to be made in face of said things.
It is unquestionably true that an official of the Government is not authorized to give away or remit -a claim due the Government. This rule is grounded in a sound public policy and is not to be weakened. But it would seem that the argument based upon that rule in this case may prove too much. Manifestly the clause in question (which we denominate a proviso) was inserted for the benefit of the contractor, as the prior clause secured the basis of deduction allowed the Government, and the defendants are not now attacking the proviso. But the claimant’s contention that the proviso is contrary to public policy and therefore void may ignore a well-established principle in the construction and enforcement of contracts, namely, that where a contract contains distinct and separable stipulations some of which are valid and others illegal or contrary to public policy, and they are not so interdependent as that the one can not stand without the other, the illegal or void parts will not necessarily vitiate the parts which are good, but may themselves be discarded.
“ It is a settled principle of law that where a bond contains conditions some of which are legal and others illegal and they are severable and separable the latter may be disregarded and the former enforced.” United States v. Hodson, 10 Wall., 395; Mora case, 97 U. S., 413, 1 Page Contr., sec. 509. Neither party contends that the invalidity of the proviso affects the entire contract, and though it must have been inserted for the claimant’s benefit he alone objects to it, and it is not apparent why the clause explicitly providing for deductions from the price or for liquidated damages may not stand even if the proviso fails, or, to state it *336 differently, not the entire paragraph but the exception might fall, with the result that there could be no waiver of any deductions for delay. We suggest this point without deciding it, preferring to consider the broader question.
We find in the Bethlehem Steel Co. case, 205 U. S., 105, that a contract was construed as autnorizing liquidated damages when it contained a stipulation allowing in case of failure to deliver at the stipulated time a deduction from the contract price to be made <£ in the discretion of the Chief of Ordnance,” and that in the Crane Co. case, 46 C. Cls., 353, a contract similar to that under consideration was upheld.
It has been held that a provision in a contract making the decision of an engineer officer in charge final as to “ quality and quantity ” of material furnished or “ distance to be ascertained ” between the parties will be so treated and as not subject to review by the courts in the absence of fraud or such gross error as implies bad faith or a failure to exercise an honest judgment in the premises. Kihlberg v. United States, 97 U. S., 398; Sanger and Moody v. United States, 40 C. Cls., 47, 68; Sweeney v. United States, 109 U. S., 618; Martinsburg, etc., R. Co. v. March, 114 U. S., 549; Gleason case, 175 U. S., 588; Barlow case, 184 U. S., 123.
In the Gleason case a term in the contract was that if the contractors should by freshets, ice, or other force or violence of the elements and by no fault of their own be prevented from completing the work or delivering the material at the time agreed upon, such additional time should be allowed as in the judgment of the engineer shall be reasonable, and with regard thereto the court said (p. 604):
“ In other words, the parties agreed that if the contractors should fail to complete their contract within the time stipulated they should have the benefit of the judgment of the engineer as to whether such failure was the result of their own fault or of forces beyond their control, and in the latter event of his judgment as to what extension of time would be just and reasonable.” It was held therefore that the contractor’s right or privilege to a further extension “ depended upon the judgment of the engineer in charge when applied *337 to ” for such extension. No actual loss or damage was shown there “ by reason of the noncompletion of the work, and as no forfeitures were declared at the times of the several extensions ” they were deemed to have been waived.
We do not mean to disturb the salutary rule relative to the power of Government officials or agents to waive or release claims or assets of the Government, nor do we do so in this case. But where the parties made the contract before us agreeing to submit their differences growing out of some feature of the contract to the judgment of a bureau, we think the authorities above cited sustain us in upholding the stipulation as made. Of course, if there were fraud or such gross error as implies bad faith or a failure to exercise an honest judgment in deciding that the deductions be not made, the Government would not be bound and the contractor would remain liable.
It follows that defendant’s motion for a new trial should be granted, the demurrer sustained, and the petition dismissed. And it is so ordered.