**HUGHES BROS., Inc.,**

v.

**The UNITED STATES.**

No. 249–52.

United States Court of Claims.

Oct. 4, 1955.

Irving A. James, New York City, for plaintiff. Krisel, Beck & Taylor, New York City, were on the brief.

Lawrence S. Smith, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues to recover $15,150 which the Government collected as liquidated damages for breach of contract. The case comes before us on motion by each party for summary judgment.

In September 1947 the defendant had a number of vessels in berthing sites throughout the country. Among the berthing sites was one in the Port of Charleston, South Carolina, designated as Wando Berthing Site, where the vessels in question, with other vessels, were located.

By its Invitation for Bids, dated September 2, 1947, and an amendment thereto, the United States Maritime Commission (briefly designated herein as USMC) offered for sale and scrapping a variety of vessels, including certain LST's involved in this litigation. The Invitation for Bids, as amended, provided, under the heading *Delivery of Vessels*, that the defendant would break each vessel from its then location into the stream, within 10 days after the buyer's request therefor; that the buyer was to accept delivery at this point; that the buyer must accept delivery within 40 days after it received notice of acceptance of the bid; that the Government for just cause and upon proper request would grant an extension of time for taking delivery.

The invitation then sets forth several alternative remedies in case the buyer failed or refused to accept delivery within the time specified. The Invitation for Bids stated that in the event of such delay actual damages to the USMC would be difficult of ascertainment and the buyer would be required to pay $15 per vessel per day as liquidated damages. The USMC had the further right, upon giving 10 days' written notice, to store each vessel elsewhere at the expense of the buyer or to rescind the sale or to resell each vessel for the account of the buyer.

Plaintiff executed and delivered to the USMC three Forms of Bids, whereby it offered to buy the LST's in question for $171,104. By endorsement to each of these forms and by letter dated Novem-

ber 5, 1947, the USMC accepted plaintiff's bids and notified plaintiff of the Government's acceptance. It does not appear when plaintiff received the notification, but the parties agree that these vessels (with the exception of two not here involved) were not accepted by plaintiff for various periods in excess of 40 days so that damages computed at $15 per vessel per day amounted to $15,-150.

Plaintiff completed payment for the vessels on December 9, 1947. It accepted delivery on two of the vessels within the 40 days allowed by the contract. As to the remaining vessels plaintiff never received the USMC's permission for late delivery and plaintiff admits it thereby has breached the contract. The sole question is one of damages. The petitioner contends that the provision for "liquidated damages" was a penalty, hence illegally collected and subject to be returned in toto in the present action. The Government answers, on the one hand, that only liquidated damages were involved here, and, on the other hand, that even if plaintiff's contention were true, the Government should be allowed to show the actual damages and deduct them from plaintiff's recovery in this suit.

The LST's bought by plaintiff were steel-hulled vessels. At the time it bought them, they were located at a berthing site in the Wando River, Charleston, South Carolina. Affidavits in the record establish that the Government had many other vessels at this site, that there were other berthing sites available in Charleston Harbor and that it would have cost between $200 and $250 per LST to remove them from the Government's berthing site to another site in the harbor.

On the record before us we cannot tell exactly how much it cost the USMC to maintain the ships in question at its Wando River site. The record contains a memorandum which gives the average monthly cost of maintaining a ship at various sites throughout the country calculated to April 1, 1947. A figure of

$600 per vessel per month is listed for the Wando River site. This may also be expressed as $20 per vessel per day. The officer in the USMC who drew the liquidated damages provision in the contract took an average for all ships at all sites throughout the country and arrived at a figure of over $17 per ship per day. He then determined the figure of $15 per vessel per day as a fair figure for liquidated damages incurred by the Government as a result of a purchaser's delay in accepting delivery. The memorandum indicates that the costs shown included costs such as:

"(1) Administrative

(2) Transportation of personnel to and from area

(3) Boat patrol and maintenance

(4) Fire protection upkeep

(5) Initial preservation—most of larger areas have considerable backlog of this work

(6) Docking of wooden hull vessels

(7) Towing"

Plaintiff argues that the Government being a paid seller was merely a gratuitous bailee; that it ceased being a gratuitous bailee at the end of the 40-day period allowed for delivery; and that thereupon it could remove and store the LST's in question elsewhere at plaintiff's cost. Specifically plaintiff contends that the USMC could have had the vessels towed to another one of the berthing sites in Charleston Harbor and that this would have been the sum total of its damages.

We do not think it necessary to comment upon plaintiff's exposition of the law of bailments or its applicability to the facts of this case. We point out that plaintiff asserts in its brief that defendant by specifying the 40-day period gave notice of its intention to end the gratuitous bailment at that time, and that it at that time could have removed the vessels and stored them elsewhere and that the defendant could have charged plaintiff for the "cost of such removal and the cost of such storage" of the vessels. If

this had been done, the same elements of cost would have prevailed—the fire protection upkeep, the maintenance, patrolling and other costs at any other storage place, plus the cost of towage.

If there was such a wide difference in the stipulated amount and the prospective actual cost there is no reason why plaintiff could not have accepted the vessels according to its contract, paid the cost of towage and itself assumed the fire protection upkeep, patrol, danger of collision, danger of storm and any other costs of the delay in acceptance.

The question then reduces to this: was the provision for paying $15 per ship for each day over the 40-day limit that the ship remained undelivered a provision for liquidated damages or a penalty?

When are liquidated damages provisions enforceable and when are they construed as penalties? The cases on this question do not enunciate an absolutely consistent formula. The Supreme Court has recently said, in Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32, that such provisions are enforced when they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract. The Court also noted that such provisions are particularly useful when damages are uncertain in nature or amount or unmeasurable. It may be added that there was no element of actual damage in the Priebe case. We quote from the opinion in Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 304, 63 L.Ed. 647, in which the Court in discussing a liquidated damages provision uses the following language:

"* * * When that intention is clearly ascertainable from the writing, effect will be given to the provision, as freely as to any other, where the damages are uncertain in nature or amount or are difficult of ascertainment or where the amount stipulated for is not so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed

at or as to imply fraud, mistake, circumvention or oppression. There is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced."

■ It has also been held that where there is an excessive disproportion between the actual and stipulated damages, the stipulated damages will be construed as a penalty. Kothe v. R. C. Taylor Trust, 280 U.S. 224, 226, 50 S.Ct. 142, 74 L.Ed. 382. And these tests are to be applied not as of the time of breach but as of the time of making the contract. Priebe & Sons v. United States, supra, 332 U.S. at page 412, 68 S.Ct. at page 126.

■ We hold that the pleadings and facts developed at the pretrial conference demonstrate that the damages for delay in accepting delivery were difficult of ascertainment and that there was good reason for the parties to agree on a reasonable amount as liquidated damages. We also are of the opinion that the stipulated damages were, on the face of the contract, not without reasonable relation to the foreseeable actual damages and were not excessively disproportionate to them. Vessels cannot be stored in a river like so many piles of scrap iron in a backyard. They must be secured against the shifting tides and winds, against the ravages of vandals, against the ever-present threat of fire, against endangering other ships. All this requires some care and supervision, which in turn costs money. How much depends upon a multitude of factors in each instance. Just this reason makes the provision for liquidated damages peculiarly appropriate.

■ Nor do we think that the contract's liquidated damages clause was an unfair or unreasonable attempt to fix the damages in case of plaintiff's delay in accepting delivery. The officer who drew the contract provision calculated an average figure representing the cost of maintaining ships at berthing sites throughout the country. He then set the liquidated damages at some two dollars less than the figure for the country as a whole. The damages so stipulated actually were five dollars less than the average cost for 168 vessels located at the Wando River site in April 1947.

It is true that these cost figures contained some elements which were not applicable to plaintiff's vessels, but it does not appear that a more detailed breakdown was available. Moreover, other elements were clearly applicable, such as costs under the headings of

"Administrative

Boat patrol and maintenance

Fire protection upkeep

Transportation of personnel to and from area"

The Invitation for Bids was evidently drawn to secure bids on a variety of vessels but the liquidated damages clause was uniform as to all. It appears that this was the only practicable way of handling the problem although, in the nature of the case, it had the result that in individual instances there were discrepancies between the stipulated damages and the damages that may actually have been anticipated. But the disproportion is not so great here as to make the provision unenforceable. From aught that appears the actual damages that could reasonably be expected at the Wando River site may have been in excess of the liquidated damages.

The Government made a reasonable attempt in all the circumstances of this case to pre-estimate and fix the damages. The plaintiff agreed to the terms. The stipulated amount is not a penalty and must be enforced as any other provision of a contract. Plaintiff's motion for summary judgment is overruled, defendant's motion for summary judgment is granted, and the petition dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.