BRYSON, Circuit Judge.
 

 DJ Manufacturing Corporation (DJ) appeals from a decision of the United States Court of Federal Claims granting summary judgment to the government. DJ argued that the liquidated damages clause in the contract between the parties was unenforceable as a penalty. The trial court rejected that argument,
 
 DJ Mfg. Corp. v. United States,
 
 33 Fed. Cl. 357 (Fed.C1.1995), as do we.
 

 I
 

 In January 1991, the government solicited an offer from DJ for 283,695 combat field packs to support troops who were then participating in Operation Desert Storm. The solicitation documents set forth a delivery schedule, sought accelerated delivery if possible, and provided for liquidated damages for late delivery. The parties negotiated a contract, which became effective on February 14, 1991. Like the underlying solicitation documents, the contract provided that, for each article delivered after the date fixed in the contract, liquidated damages would be assessed at
 
 %
 
 of one percent of the contract price for each day of delay.
 

 DJ missed several deliveiy deadlines. In accordance with the liquidated damages clause, the government withheld payment in the amount of $663,266.92, a reduction of about 8 percent of the total contract price of $8,493,828.
 

 DJ filed suit in the Court of Federal Claims to recover the withheld amount, contending that the liquidated damages clause constituted an unenforceable penalty. The government moved for summary judgment. In support of its motion, the government submitted a declaration by an Army logistics management specialist, who stated that possession of the field packs was essential to the troops’ combat readiness. In addition, the government submitted a declaration from the contracting officer, who stated that all contracts for items to be used in Operation Desert Shield/Desert Storm contained liquidated damages clauses for late delivery because of the need to get war items to the soldiers quickly.
 

 
 *1133
 
 In response to the government’s motion, DJ produced an affidavit of its president, who stated that the rate set forth in the liquidated damages clause “does not seem related to any specific need with respect to the item in question or the time-frame, but, rather, seems to be a fairly standard rate used in many solicitations for many different items.” The affidavit listed several other government contracts and solicitations that allegedly contained clauses setting liquidated damages at the same rate. DJ argued that there was therefore a disputed issue of material fact as to whether the contracting officer had “used a standard rate, historically employed by [the agency]” and had made “no attempt to forecast just compensation.”
 

 The Court of Federal Claims granted the government’s motion. At the outset, the court held that DJ bore the burden of establishing that the liquidated damages clause was unenforceable, and that in order to avoid summary judgment DJ had to point to evidence raising a triable question of fact with respect to that issue. The court then recited the rule that a liquidated damages clause is enforceable if the harm that would be caused by a breach is difficult to estimate and the amount or rate fixed as liquidated damages is a reasonable forecast of the loss that may be caused by the breach.
 

 As to the first element, the court characterized this ease as presenting “a paradigmatic example of a situation where accurate estimation of the damages resulting from delays in delivery is difficult, if not impossible.” As to the second element, the court rejected DJ’s argument that in order to determine the reasonableness of the liquidated damages, it was necessary to inquire into the process that the contracting officer followed in reaching the amount that was inserted into the contract. The inquiry, the court explained, is an objective one. “The proper inquiry focuses on whether the amount itself is a reasonable forecast, not whether, as [DJ] seems to suggest, the individual responsible for proposing the rate engaged in a reasonable attempt to forecast damages.” Because DJ failed to offer any evidence that the liquidated damages rate agreed upon in the contract was “greater than that which the government could reasonably suffer as a result of the delayed delivery of the field packs,” the court granted the government’s motion and ordered DJ’s complaint to be dismissed.
 

 II
 

 By fixing in advance the amount to be paid in the event of a breach, liquidated damages clauses save the time and expense of litigating the issue of damages. Such clauses “serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable,”
 
 Priebe & Sons v. United States,
 
 332 U.S. 407, 411, 68 S.Ct. 123, 126, 92 L.Ed. 32 (1947), which is often the case when there is a delay in the completion of a contract for the government.
 
 Id.; United States v. Bethlehem Steel Co.,
 
 205 U.S. 105, 120, 27 S.Ct. 450, 455-56, 51 L.Ed. 731 (1907);
 
 Jennie-O Foods, Inc. v. United States,
 
 580 F.2d 400, 413, 217 Ct.Cl. 314 (1978) (“Costs to the public convenience and the temporary thwarting of the public goals ... are hard to measure with precision.”).
 

 When damages are uncertain or difficult to measure, a liquidated damages clause will be enforced as long as “the amount stipulated for is not so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression.”
 
 Wise v. United States,
 
 249 U.S. 361, 365, 39 S.Ct. 303, 304, 63 L.Ed. 647 (1919);
 
 see United States v. Bethlehem Steel Co.,
 
 205 U.S. at 121, 27 S.Ct. at 456 (“The amount is not so extraordinarily disproportionate to the damage which might result from the [breach], as to show that the parties must have intended a penalty and could not have meant liquidated damages.”). With that narrow exception, “[t]here is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced.”
 
 Wise v. United States,
 
 249 U.S. at 365, 39 S.Ct. at 304;
 
 see also Sun Printing & Publishing Ass’n v. Moore,
 
 183 U.S. 642, 674, 22 S.Ct. 240, 253,
 
 *1134
 
 46 L.Ed. 366 (1902) (except where “the sum fixed is greatly disproportionate to the presumed actual damages,” a court “has no right to erroneously construe the intention of the parties, when clearly expressed, in the endeavor to make better contracts for them than they have made for themselves”).
 

 A party challenging a liquidated damages clause bears the burden of proving the clause unenforceable.
 
 See Jennie-0 Foods, Inc. v. United States,
 
 580 F.2d at 414;
 
 Farmers Export Co. v. M/V Georgis Prois, Etc..
 
 799 F.2d 159, 162 (5th Cir.1986). That burden is an exacting one, because when damages are uncertain or hard to measure, it naturally follows that it is difficult to conclude that a particular liquidated damages amount or rate is an unreasonable projection of what those damages might be.
 
 See Restatement (Second) of Contracts
 
 § 356 cmt. b (1981) (“The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty ... the easier it is to show that the amount fixed is reasonable.”); 5 Samuel Williston,
 
 A Treatise on the Law of Contracts
 
 § 783 (W. Jaeger ed. 1961).
 

 While some state courts are hostile to liquidated damages clauses, federal law “does not look with disfavor upon ‘liquidated damages’ provisions in contracts.”
 
 Priebe & Sons, Inc. v. United States,
 
 332 U.S. at 411, 68 S.Ct. at 126. The few federal cases in which liquidated damages clauses have been struck down provide some indication of how rare it is for a federal court to refuse to enforce the parties’ bargain on this issue. For example, in
 
 Priebe & Sons, Inc. v. United States,
 
 the Supreme Court struck down a liquidated damages clause when it was “certain when the contract was made” that the breach in question “plainly would not occasion damage.” 332 U.S. at 413, 68 S.Ct. at 126. The contract in
 
 Priebe
 
 contained two liquidated damages clauses: one for delay in the delivery of eggs and a second for failure to have the eggs inspected and ready for delivery by a specific time prior to the delivery date. The contractor was late in meeting the inspection requirement, but delivered the eggs on time. Thus, only the second liquidated damages clause was at issue in the case. As the Court viewed that clause, a delay in inspection that did not result in a delay in delivery could not cause any loss to the government. At the same time, however, the Court stated that if the breach had involved “failure to get prompt performance when delivery was due,” the Court would have had “no doubt of the validity of the provision for ‘liquidated damages’ when applied under those circumstances.”
 
 Id.
 
 at 412, 68 S.Ct. at 126.
 

 Another case, equally unusual, involved a liquidated damages clause in a lease. In that case,
 
 Kothe v. R.C. Taylor Trust,
 
 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382 (1930), the lessee agreed that the filing of a petition for bankruptcy against him would be deemed a breach, and that the lessor would be entitled to recover damages for the breach in an amount equal to the rent due for the remaining term of the lease. The Court held that the amount stipulated “is so disproportionate to any damage reasonably to be anticipated in the circumstances disclosed that we must hold the provision is for an unenforceable penalty.” 280 U.S. at 226, 50 S.Ct. at 143. In reaching that conclusion, the Court made clear that it was influenced by the fact that the clause would take effect only in the event of the lessee’s bankruptcy, and thus that the parties “were consciously undertaking to contract for payment to be made out of the assets of a bankrupt estate — not for something which the lessee would be required to discharge” and that enforcing the clause would be contrary to the purposes of the Bankruptcy Act.
 
 Id.
 
 at 226-27, 50 S.Ct. at 143.
 

 In more conventional cases, when the amount of prospective damages are difficult to determine at the outset and the parties agree upon a fixed amount or rate to pay in the event of a breach, thereby bypassing the trouble and expense of litigating the damages issue, federal courts have regularly upheld liquidated damages clauses.
 
 See, e.g.
 
 (in addition to the cases previously cited),
 
 Robinson v. United States,
 
 261 U.S. 486, 488, 43 S.Ct. 420, 421, 67 L.Ed. 760 (1923) (“a provision giving liquidated damages for each day’s delay” is appropriate, “and courts give it effect in accordance with its terms”);
 
 J.E.
 
 
 *1135
 

 Hathaway & Co. v. United States,
 
 249 U.S. 460, 464, 39 S.Ct. 346, 347, 63 L.Ed. 707 (1919) (“[t]here is no reason why parties competent to contract may not agree that certain elements of damage difficult to estimate shall be covered by a provision for liquidated damages”);
 
 Maryland Dredging & Contracting Co. v. United States,
 
 241 U.S. 184, 190, 36 S.Ct. 545, 547, 60 L.Ed. 945 (1916) (“There is no element of deception or exorbitance and although the ease seems a hard one we see no ground upon which the claimant can escape from the terms to which he has agreed.”);
 
 Skip Kirchdorfer, Inc. v. United States,
 
 229 Ct.Cl. 560 (1981) (liquidated damages clause upheld when “at the time of the contract’s execution, it was reasonable to expect that delays in contract completion would result in damages to the Government”);
 
 Higgs v. United States,
 
 546 F.2d 373, 212 Ct.Cl. 146 (1976) (upholding as liquidated damages a standard clause requiring a defaulting purchaser to forfeit a five percent earnest money deposit);
 
 Young
 
 As-
 
 socs., Inc. v. United States,
 
 471 F.2d 618, 200 Ct.Cl. 438 (1973) (upholding a standard liquidated damages rate because plaintiff failed to show that it was unreasonable);
 
 Bailey v. Manufacturers’ Lumber Co.,
 
 224 F. 806, 809 (S.D.N.Y.1915) (L. Hand, J.) (“courts should encourage [such agreements] to the utmost instead of being ‘disposed to lean against them,’ as suggested by [a state court case]”).
 

 Ill
 

 In light of these principles, the trial court was correct to grant summary judgment to the government. D J argues that the government should bear the burden of proving the clause enforceable and that the evidence before the trial court did not establish the government’s right to recovery as a matter of law. That argument, however, flies in the face of settled law regarding the burden of proof and the standards for granting summary judgment.
 

 As noted above, it was DJ’s burden to prove that the liquidated damages clause was unenforceable. When a party moves for summary judgment on an issue as to which the other party bears the burden of proof, the moving party need not offer evidence, but may obtain summary judgment merely by pointing out to the court “that there is an absence of evidence to support the nonmov-ing party’s case.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986);
 
 see Conroy v. Reebok Int’l, Ltd.,
 
 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994);
 
 Avia Group Int’l, Inc. v. L.A Gear Calif, Inc.,
 
 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1551 (Fed.Cir.1988).
 

 The only evidence that DJ produced at the summary judgment stage was the affidavit of its president, which alleged that the liquidated damages rate was a “standard” rate, rather than a rate selected specifically for the field pack contract. In addition, DJ relies on the declaration of the contracting officer, which stated that the liquidated damages clause was put into the field pack contract, as well as other contracts for items to be used in Operations Desert Shield/Desert Storm “due to the almost overwhelming need to get war items, such as field packs, into the soldiers’ possession as soon as possible.”
 

 Neither of those two items of evidence raises an issue of material fact requiring a trial. DJ argues that the contracting officer’s statement about the need to get war items into the soldiers’ possession quickly shows that the liquidated damages clause was designed to be a “spur to performance” and thus was an unenforceable penalty. That assertion, however, is at odds with several Supreme Court decisions, which make clear that a liquidated damages clause is not rendered unlawful simply because the promisee hopes that it will have the effect of encouraging prompt performance by the promisor. In
 
 Robinson v. United States,
 
 for example, the Court explained that in the case of construction contracts, “a provision giving liquidated damages for each day’s delay is
 
 an appropriate means of inducing due performance,
 
 or of giving compensation, in case of failure to perform.” 261 U.S. at 488, 43 S.Ct. at 421 (emphasis added). Similarly, in
 
 Wise v. United States,
 
 the Court stated that courts should “look with candor, if not with favor,” on liquidated damages clauses
 
 “as promoting prompt performance of contracts
 
 and be
 
 *1136
 
 cause adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense.” 249 U.S. at 366, 39 S.Ct. at 304 (emphasis added). And in
 
 United States v. Bethlehem Steel Co.,
 
 the Court held that a liquidated damages clause may provide
 
 “security for the proper performance of the contract
 
 as to time of delivery” unless the amount of the liquidated damages is “extraordinarily disproportionate to the damage which might result from the [breach].” 205 U.S. at 121, 27 S.Ct. at 456 (emphasis added).
 

 In support of its assertion that an intention to “spur performance” converts a liquidated damages clause into an unenforceable penalty, DJ cites
 
 Priebe & Sons, Inc. v. United States.
 
 That case, however, does not stand for such a broad proposition. As noted above, the liquidated damages clause at issue in
 
 Priebe & Sons
 
 served no compensatory function at all, since there was no possibility that the breach at issue would result in any compensable loss. Thus, the liquidated damages clause was struck down because it served
 
 “only
 
 as an added spur to performance,” and because it constituted “an exaction of punishment for a breach
 
 which could produce no possible
 
 damage.” 332 U.S. at 413, 68 S.Ct. at 127 (emphasis added).
 

 There is no inconsistency in a promisee’s seeking assurance of performance through a guarantee of fair compensation for breach. As Williston noted "with respect to standard (and legitimate) liquidated damages provisions, “there can be no doubt that these provisions are intended not merely as a provision for an unfortunate and unexpected contingency but also to secure the promisee in the performance of the main obligation and to make the promisor more reluctant to break it.” 5 Samuel Williston,
 
 supra,
 
 § 778, at 692. In this respect, at least, Corbin was in agreement.
 
 See
 
 5 Arthur J. Corbin,
 
 Cor-bin on Contracts
 
 § 1058, at 339-40 (1964 ed.) (“The purpose of providing for a money payment in case of breach, whether it be called a penalty, a forfeiture, liquidated damages, or merely a sum of money, is primarily to secure the performance promised____ Penalties are said to be
 
 in terrorem
 
 to induce performance as promised; in large measure the same is true of liquidated damages.”). What the policy against penalties is designed to prevent is a penal sanction that is so disproportionate to any damage that could be anticipated that it seeks “to enforce performance of the main purpose of the contract
 
 by the compulsion of this very disproportion.”
 
 5 Samuel Williston,
 
 supra,
 
 § 776, at 668 (emphasis added). Nothing that DJ offered or pointed to in the evidence before the trial court remotely suggested that the liquidated damages clause in this case is of that character.
 

 DJ’s second argument is that the evidence before the trial court raised a triable issue of fact as to whether the contracting officer set the liquidated damages rate based on a particularized assessment of the facts of this contract. In making that argument, DJ relies on 48 C.F.R. § 12.202(b), which directs that the “rate of liquidated damages used must be reasonable and considered on a ease-by-case basis since liquidated damages fixed without any reference to probable actual damages may be held to be a penalty, and therefore unenforceable.”
 

 Contrary to DJ’s assertion, section 12.202(b) does not create a rule of substantive law requiring a liquidated damages clause to be struck down unless the liquidated damages rate is specially tailored to the particular contract in advance. Section 12.202(b) merely recognizes that a court may refuse to enforce a liquidated damages clause if the liquidated damages amount or rate is shown not to be reasonably related to the actual damages that the promisee could suffer as a result of a breach, and it advises that care should be taken to ensure that the rate or amount is not unreasonable in light of the possible actual damages that could flow from breach. The regulation thus appears to be designed for internal guidance rather than to create rights in contracting parties. In any event, our predecessor court has held that the language on which DJ relies does not require that liquidated damages clauses be “tailor-made for each individual contract.”
 
 Young
 
 Assocs.,
 
 Inc. v. United States,
 
 471 F.2d at 622 (construing an identically worded predecessor to 48 C.F.R. § 12.202(b) and re-
 
 *1137
 
 jeeting the plaintiffs argument that liquidated damages clause is invalid because “no ‘case-by-case’ consideration was given to the rate of liquidated damages”). Instead, the test is objective; regardless of how the liquidated damage figure was arrived at, the liquidated damages clause will be enforced “if the amount stipulated is reasonable for the particular agreement at the time it is made.”
 
 Young Assocs., Inc. v. United States,
 
 471 F.2d at 622.
 
 See also Higgs v. United States,
 
 546 F.2d at 377 (standard five percent earnest money forfeiture upheld as reasonable liquidated damages, even though not specifically tailored to a particular contract);
 
 Hughes Bros., Inc. v. United States,
 
 134 F.Supp. 471, 474, 133 Ct.Cl. 108 (1955) (liquidated damages clause that provided for uniform liquidated damages for a variety of breaches upheld, even though “it had the result that in individual instances there were discrepancies between the stipulated damages and the damages that may actually have been anticipated”). The trial court was therefore correct in holding that it is unnecessary to inquire into the process that the contracting officer followed in arriving at the liquidated damages figure that was put forth in the solicitation and agreed to in the contract.
 

 Finally, DJ argues that there was a triable issue as to whether the liquidated damages rate that the parties agreed upon in the field pack contract was unreasonable. Once again, DJ bore the burden of pointing to evidence establishing a material factual dispute on that issue, and the trial court correctly held that DJ failed to carry that burden.
 

 The damages that are likely to flow from delays in the delivery of goods is often difficult to assess, particularly when the goods are to be produced in the uncertain setting of wartime.
 
 See Priebe & Sons, Inc. v. United States,
 
 332 U.S. at 412, 68 S.Ct. at 126;
 
 United States v. Bethlehem, Steel Co.,
 
 205 U.S. at 120-21, 27 S.Ct. at 455-56;
 
 Young
 
 Assocs.,
 
 Inc. v. United States,
 
 471 F.2d at 621 (“The Government’s damages stemming from delayed receipt of the supplies or construction it ordered are normally hard to measure, and it is usually reasonable to establish some fixed monetary substitute for calculation by trial.”). As the Third Circuit put the matter in
 
 United States v. Le Roy Dyal Co.,
 
 186 F.2d 460, 463 (3d Cir.1950),
 
 cert. denied,
 
 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1357 (1951), “[i]n dealing with some matters pertaining to governmental activities, the question of ascertaining how much pecuniary loss is caused by failure of one contracting with the government to keep his promise is especially difficult.” To illustrate the point, that court cited a colorful English case that is closely analogous here
 
 (id.):
 

 But how much damage could accrue to the Spanish government because a shipyard failed to deliver, at the time agreed upon, four torpedo-boat destroyers? This question was involved in testing the validity of a provision for liquidated damages for delay in the House of Lords decision in
 
 Clydebank Engineering and Shipbuilding Co., Ltd. v. Castaneda.
 
 How could the damages be accurately determined? As Lord Halsbury said in an opinion upholding the provision ... “in order to do that properly and to have any real effect upon any tribunal determining that question, one ought to have, before one’s mind the whole administration of the Spanish Navy.”
 

 See also
 
 5 Arthur L. Corbin,
 
 supra,
 
 § 1072, at 402 (“Since the injury caused by [delay in performance] is nearly always difficult to determine, the courts strongly incline to accept the estimate [in a liquidated damages clause] as reasonable and to enforce it”).
 

 In this case, not only did DJ fail to raise a triable question with respect to the difficulty of forecasting damages at the outset, but it also failed to raise any factual issue casting doubt on the reasonableness of the stipulated damages rate. Nor is there anything inherently unreasonable about that rate — a reduction in the contract price of
 
 %
 
 of one percent per day, or two percent per month, on a contract that was supposed to be completed within a period of only a few months. In fact, the decision of our predecessor court in
 
 Pacific Hardware & Steel Co. v. United States,
 
 49 Ct.Cl. 327, 1914 WL 1416 (1914), provides strong support for the reasonableness of the liquidated damages rate selected in this case. The military supply contract at issue in
 
 Pacific Hardware
 
 con
 
 *1138
 
 tained a liquidated damages clause providing for a deduction of
 
 %
 
 of one percent of the contract price for each day of delay after the scheduled delivery date (a slightly higher rate than the liquidated damages rate at issue in this case). Noting that a month’s delay would result in the withholding of only three percent of the contract price, the court ruled (49 Ct.Cl. at 334):
 

 This basis of ascertaining the damages, if we are to treat it as such, does not appear to be unreasonable or oppressive. It indicates, we think, that the parties had in mind the inherent difficulty of proving actual damages and the differences that might arise between the parties in making settlements if there were delays in delivery. The representatives of the Government on the one hand could reason that it was desirable to have a provision in the contract which would render unnecessary any differences in settlement; while the contractor on the other hand could reason that such a course was preferable, because if for no other reason it would eliminate the delays incident to lawsuits brought to secure settlements.
 

 In addition to being of roughly the same dimension as the liquidated damages rate in this case, the rate in
 
 Pacific Hardware
 
 also appears to have been a “standard” rate, as there were at least two other contemporaneous Court of Claims decisions upholding liquidated damages clauses containing the same liquidated damages rate of
 
 %
 
 of one percent per day.
 
 See Morris v. United States,
 
 50 Ct.Cl. 154 (1915);
 
 Crane Co. v. United States,
 
 46 Ct.Cl. 343 (1911). Despite the “standard” nature of the rate, the Court of Claims found the rate to be reasonable in all three cases. In this case, likewise, DJ has failed to point to any reason to believe that the liquidated damages rate of
 
 %
 
 of one percent per day agreed upon by the parties is so exorbitant in light of the prospective injury to the government that it is plainly penal in nature and therefore may not be enforced.
 

 AFFIRMED.