# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of --            )
                                 )
Maruf Sharif Construction Company    )         ASBCA No. 61802
                                 )
Under Contract No. N33191-14-D-1053   )

APPEARANCE FOR THE APPELLANT:       Mr. Mohammad Asif Stanekzai
                                                   President

APPEARANCES FOR THE GOVERNMENT:    Ronald J. Borro, Esq.
                                                   Navy Chief Trial Attorney
                                                   Rawn M. James, Jr., Esq.
                                                   Senior Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE THRASHER

This appeal involves a contract for renovation of an entry control point (ECP) and quarter deck of a building on a naval facility in Bahrain. The government found that appellant finished the contract 131 days late and assessed liquidated damages (LDs) in the amount of $26,200.00, later reduced by the contracting officer's (CO's) decision to $17,000. Appellant elected to proceed under the Board's Small Claims (Expedited) procedures, Board Rule 12.2. The Contract Disputes Act, 41 U.S.C. § 7106(b)(4)(5), as implemented by Board Rule 12.2, provides that this decision shall have no precedential value, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside. The parties have jointly agreed that the appeal shall be heard on the record, per Board Rule 11.

## SUMMARY FINDINGS OF FACT

1. On September 7, 2016, Naval Facilities Engineering Command, Europe, Africa, Southwest Asia (the government) competitively awarded Maruf Sharif Construction Company (MACEC),[1] Task Order No. 0010, under an indefinite-delivery/indefinite-quantity (ID/IQ), design/build contract, No. N33191-14-D-1053 for the renovation of the ECP and quarter deck of Building 262, on NSA-1 Bahrain. The task order was a firm-fixed-price contract in the amount of $286,750.00. (Compl. ¶¶ 1-4)

---

[1] MACEC is located in Kabul, Afghanistan.

2. The contract's Statement of Work described the Project Objectives as:

> Objective of the project is to ensure that personnel do not access the building without a badge/proper authorization.
>
> This project will create an ECP that meets security criteria by locating cell phone storage outside of the existing quarter deck area and creates defined entrance and exit system while still allowing for emergency egress.

(R4, tab 4 at 54, ¶ 2)

3. The Request for Proposal (RFP) included Federal Acquisition Regulation (FAR) clause 52.211-12, LIQUIDATED DAMAGES – CONSTRUCTION (SEP 2000). The LDs amount stated in the RFP and included in the executed task order is $200.00 for each calendar day until the work is completed or accepted. (R4, tab 4 at 9)

Late Completion, Government Assessment of LDs and Appellant's Response

4. The combined design and construction period totaled 276 calendar days from task order award date with a contract completion date (CCD), as awarded, of June 10, 2017 (R4, tab 4 at 9). On August 9, 2017, the government issued a letter of concern stating appellant had only completed 45% of the project by the CCD, the government would begin assessing LDs from the day after CCD, June 11, 2017, and would begin withholding 10% on progress payment invoices (R4, tab 8). Appellant responded by letter on August 19, 2017. The body of the letter alleged two instances of government-caused excusable delay. Additionally the letter included six attachments, one of which was a Project Narrative Report including a Detailed Schedule, dated August 18, 2017. This project narrative asserted five instances of government-caused delays and stated the project was at 87.76% complete as of the date of the schedule. (R4, tab 15)

5. On December 11, 2017, the government forwarded a letter to MACEC stating:

> A final inspection of the reference[d] contract work was conducted on October 19, 2017.... [N]o discrepancies remain to be corrected by your firm and no punch list is required. Since there are no remaining discrepancies that significantly impact the use of the facility, the Government accepts the facility for beneficial occupancy as of October 19, 2017.

(R4, tab 5)

2

6. The government issued a notice of assessment of LDs to appellant on January 5, 2018, for 131 calendar days in the amount of $200 per day in the amount of $26,200.00 (R4, tab 2). Appellant responded on January 25, 2018, stating that the government miscalculated the number of days by not including a period of 168 days of government delay and asserted the LDs are a penalty because the government did not incur any actual damages due to the delay. Like appellant's August 19, 2017 letter, this letter also attached a Schedule Narrative Report dated January 25, 2018, that stated the project was 100% complete and asserted seven instances of government-caused delay. (R4, tab 3)

### Appellant's Claim and Contracting Officer's Final Decision (COFD)

7. Appellant submitted a claim to the CO on March 3, 2018, requesting a final decision. In response, the CO issued a final decision reducing the number of assessed days to 85 in the amount of $17,000, the current amount in dispute, as a result of miscalculation (131, actually 130-day delay) and recognizing 44 days of government-caused delay associated with design review that delayed the Notice to Proceed (NTP), establishing a new completion date of July 25, 2017. (R4, tab 1)

### Affidavit Testimony

8. The only testimony submitted by the government is an affidavit by Ms. Carmel Sanchez, who was a contract specialist on this task order during MACEC's performance of the work. Ms. Sanchez's testimony is a detailed estimate of actual government damages in the amount of $12,476.80 resulting from MACEC's inability to complete the contract on time. This amount is based upon cost estimated for the period between the original completion date (June 10, 2017), and the final inspection government acceptance of the project (October 19, 2017), incurred as a result of continuing contract administration. (R4, tab 11) Although it described ongoing contract work, it is silent as to whether the project was being used for its intended purpose at any time during the period in question.

9. Appellant submitted two affidavits from Mr. Victor Moller, MACEC's project manager during performance of this contract. The first, dated October 15, 2018, provided testimony that MACEC: (1) incurred 44 days of delay as a result of the government's delay in issuing the NTP, stating:

> The final design package was submitted on Jan 7, 2017.
> The Request for proposal (RFP) mentioned that the Notice
> to Proceed (NTP) will be issued 7 days after the receiving of
> the final design. The NTP was only issued on Feb 26, 2017.
> This is 44 days of delay caused by the government from the

3

start of the project that impacted the contract completion date (CCD).

(R4, tab 12 at 2); (2) incurred 12 days of excusable delay related to a signage issue, stating:

> I summitted [sic] RFI-003 "Signage" for government review on Sep 7, 2017. After 81 days including 3 days for RFI response mentioned in the request for proposal (RFP) and several follow ups we received a response back from Government on Nov 27, 2017 stating that the government will provide the new signage and MACEC remain responsible for the installation. We only received the government furnished equipment on Dec 8, 2017. This added an additional 12 days delay after the resolution provided to RFI-003. These delays caused by the government impacted the CCD of the project.

(*Id.*); and (3) that the contract was substantially completed for its intended purpose on August 30, 2017,[2] stating:

> The project objective was to ensure that un-authorized personnel do not access the building without a badge/proper authorization. This project objective and facility was substantially completed on Aug 30, 2017 and in use/occupied for its intended purposes-despite the fact that some punch-list items remain uncompleted. Of particular importance is the requirement that the facility could be usable for the purpose intended by all parties. This project created an entry control point (ECP) that meets the RFP/SOW critical aspects by installing 330 new phone storage boxes in the newly buil[t] quarter deck area and creates defined entrance and exit system while still allowing for emergency egress.

(*Id.*)

---

[2] Mr. Moller's first affidavit identifies August 30, 2017, as the date the project was substantially complete (finding 9), but his second affidavit identifies August 31, 2017 (finding 10). We find August 31, 2017, to be the correct date and the 30th to be a mistake because the record indicates by September 11, 2017, MACEC considered the project to be substantially complete on August 31, 2017, and communicated this to the government (finding 10).

4

10. Mr. Moller's second affidavit, dated November 23, 2018, was in reply to the government's submission of Ms. Sanchez's affidavit calculating the government's actual damages (R4, tab 13). Mr. Moller again stated substantial completion occurred on August 31, 2017. In support of this testimony, Mr. Moller referenced weekly meeting minutes that documented that substantial completion occurred by August 31, 2017, stating, "The Government ignored the fact that this project was substantially completed on Aug 31, 2017. This was documented in the weekly meeting minutes with no comment from the government. This statement was made as the intent of the project objective was met." (*Id.* at 2, ¶ 2.b.) Mr. Moller's affidavit does not specifically identify the particular meeting minutes but MACEC was requested to submit them. MACEC's submittal included a cover letter emailed September 9, 2017, requesting a project meeting with the government on September 11, 2017, stating, "This project is at 90% complete and we would like to share our plan to bring this project to a close" (R4, tab 16 at 1). A proposed agenda for the meeting was attached to the cover letter. The meeting appears to have happened as proposed by the agenda because the attached minutes of the meeting are signed by the attendees, including two government attendees, the construction manager and engineering technician, but not the CO. (*Id.* at 2) The meeting minutes included a discussion statement, "Current project status is substantially completed as of 31 Aug 2017 in terms of the project objection [sic] description" (*id.* at 4). Additionally, Mr. Moller testified regarding his opinion that the specific statements in Ms. Sanchez's affidavit regarding work hours performed by government staff are factually incorrect (*id.* at 2-4).

## DECISION

A liquidated damages (LDs) clause will be enforced unless the amount specified is "so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression." *DJ Mfg. Corp. v. United States*, 86 F.3d 1130, 1133 (Fed. Cir. 1996) (quoting *Wise v. United States*, 249 U.S. 361, 365 (1919)). The test is objective and the clause is valid if the stipulated amount is reasonable as of the time the agreement is made. *Id.* at 1137. MACEC bears the burden of proving the LDs clause is unenforceable. *Id.* at 1134.

MACEC's primary argument is that the assessment of LDs is invalid because the government suffered no real loss due to its late completion of the project (app. br. at 3, ¶ 1). Although MACEC cites several decisions in support of this position, a reading of those decisions and our precedent supports the opposite conclusion. We have long held that, "[t]he fact that, in hindsight, actual damages from late or deficient performance or completion are either higher or lower than the stipulated liquidated damages, or even non-existent, does not invalidate the liquidated damages provisions so long as they were reasonable when estimated." *American Construction Co.*, ENG BCA No. 5728, 91-2

BCA ¶ 24,009 at 120,171 (and cases cited therein). The entire reason for the clause is to agree upon a fixed rate in the event of a breach to relieve the government of proving it suffered damages. *DJ Mfg.*, 86 F.3d at 1134-35. Permitting MACEC to escape the clause's application by showing no damages were suffered in this particular case would undermine that purpose. *Downing Electric, Inc.*, ASBCA No. 37851, 90-3 BCA ¶ 23,001 at 115,504 (citing *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411-12 (1947)) ("That no actual damages might have been suffered is not proof that the amount was unreasonable.").

MACEC also alleges the Navy conducted no assessment or formula to determine the amount of LDs as evidenced by the fact it incurred no actual damages as explained in its March 3, 2018 claim. Hence, the LDs are punitive and a penalty in this case and they are not a reasonable forecast of just compensation for harm caused by untimely performance as contemplated in FAR 11.501(b). Additionally, MACEC argues the Navy failed to provide any definitive written record that the CO considered all the factors required by FAR 11.501 in determining the amount of LDs or the fact the Navy would not be damaged by late performance (compl. ¶ 8). We reject these arguments. There is no requirement that the LDs amount be tailored to the specific contract. Likewise, as we have already stated, it is unnecessary to inquire into the process that the CO followed in arriving at the amount: the test is objective and the clause is valid if the stipulated amount is reasonable as of the time the agreement is made. *DJ Mfg.*, 86 F.3d at 1136-37.

MACEC has not met its burden here. On this record we cannot find that the $200 a day figure bears no reasonable relation to the prospective delay damages the government may have incurred and cannot find that it is a penalty.

Excusable Delay

MACEC seeks remission of the assessed LDs arguing that it is entitled to time extensions for excusable delay (government-caused and/or concurrent delay). An excusable delay is one due to causes that are unforeseeable, beyond the contractor's control, and not resulting from its fault or negligence. *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345 (Fed. Cir. 2000). The delay must be to overall contract completion, meaning "it must affect the critical path of performance." *Id.* If the failure is excusable, then appellant would be entitled to time extensions and thus remission of LDs. Having found the LDs were reasonable and not a penalty, it is incumbent upon appellant to show that its failure to timely complete the work was excusable. *Chem-Care Co.*, ASBCA No. 53614, 06-2 BCA ¶ 33,427 at 165,726.

MACEC asserts numerous alleged instances of excusable delay in its responses to the government's assessment of LDs (findings 4, 6). However, the only evidence submitted in the record of possible excusable delay are found in Mr. Moller's affidavit

6

where he testifies that there was delay associated with delay in issuing the NTP and the government's delay in supplying government-furnished equipment (GFE) related to signage requirements (finding 9). As to the NTP delay, MACEC was granted that 44 calendar day remission of LDs by the CO in the COFD (finding 7). Thus, those days are not included within the current assessment of LDs. Regarding the signage issue, Mr. Moller testified that there were 90 days of excusable delay associated with this issue. Mr. Moller submitted RFI-003 "Signage" for government review on September 7, 2017. The government was required to respond in 3 days but did not respond until after 81 days, November 27, 2017, and when they did respond, changed the contract by stating the government would provide new signage as GFE for MACEC to install. Even then the government did not deliver the GFE until December 8, 2017, another 12-day delay. (Finding 9) This may have been a government-caused delay to final completion of the contract but the government did not consider completion of the signage to prevent beneficial occupancy, which the government declared on October 19, 2017 (finding 5). We conclude, the evidence indicates the government did not include the time period associated with this issue within its calculation of LDs; logically, if they had, the LDs would have extended to December 8, 2017, or some time thereafter at installation.

On this record, MACEC has failed to demonstrate entitlement to time extensions so as to receive remission of LDs and accordingly, MACEC has not met its burden to show its untimely completion was excusable.

Substantial Completion

MACEC argues in its brief that the project was substantially completed on August 31, 2017, and ready to be occupied for its intended purpose (app. br. at 4, ¶ VI. 2). LDs may not be assessed past substantial completion. *Dick Pacific Construction Co.*, ASBCA No. 57675 *et al.*, 16-1 BCA ¶ 36,196 at 176,640. Whether a contract has been substantially completed is a question of fact and a project is considered substantially completed when it is capable of being used for its intended purpose. This determination necessarily focuses upon the specific provisions in the contract that define the parties' expectations regarding the owner's reasonable use of the facility. A finding of substantial completion is only appropriate when the government has obtained, for all intents and purposes, all the benefits reasonably anticipated under the contract. *Kinetic Builder's Inc. v. Peters*, 226 F.3d 1307, 1315 (Fed. Cir. 2000).

The contract's Statement of Work described the Project Objectives as:

> Objective of the project is to ensure that personnel do not access the building without a badge/proper authorization.

7

> This project will create an ECP that meets security criteria
> by locating cell phone storage outside of the existing quarter
> deck area and creates defined entrance and exit system while
> still allowing for emergency egress.

(Finding 2)

Mr. Moller testified in his October 15, 2018 affidavit that substantial completion was met on August 30, 2017 because the "intent of the project objective was met" and, "[t]his project objective and facility was substantially completed on Aug 30, 2017 and in use/occupied for its intended purposes-despite the fact that some punch-list items remain uncompleted" (finding 9). He explained why he believed the project's objective was met on that date, stating:

> Of particular importance is the requirement that the facility
> could be usable for the purpose intended by all parties. This
> project created an entry control point (ECP) that meets the
> RFP/SOW critical aspects by installing 330 new phone
> storage boxes in the newly buil[t] quarter deck area and
> creates defined entrance and exit system while still allowing
> for emergency egress.

(*Id.*)

Mr. Moller also repeated his belief that the project was substantially complete on August 31, 2017, in his reply affidavit and stated the government was told this in a September 11, 2017 meeting but never responded (finding 10). A copy of the minutes of that meeting support Mr. Moller's testimony that MACEC considered the project substantially complete on August 31, 2017.

We conclude MACEC has met its burden of proof establishing substantial completion occurred by August 31, 2017. Thus the burden of proof shifts to the government and the government has not presented any evidence, or even any arguments, to rebut Mr. Moller's testimony that by August 31, 2017, the project was substantially complete. The record includes the government's letter to MACEC, dated December 11, 2017, stating the government considered the project ready for beneficial occupancy on October 19, 2017, based upon a final inspection, the work was complete and no significant discrepancies remained (finding 5). However, this does not rebut Mr. Moller's testimony that by August 31, 2017, the project facility was "in use/occupied for its intended purposes-despite the fact that some punch-list items remain uncompleted" (finding 9). Likewise, Ms. Sanchez's testimony also does not address this issue (finding 8). Given the fact that the government has not entered any

8

evidence into the record to rebut Mr. Moller's testimony, we find that beneficial occupancy occurred by August 31, 2017.

Therefore, based upon the new completion date of July 25, 2017, established in the August 21, 2018 COFD (finding 7), LDs would begin to run on July 26, 2017, till substantial completion on August 31, 2017, totaling 36 calendar days. We conclude the government is only entitled to assess 36 days of LDs in the amount of $7,200. Accordingly, appellant is entitled to recover $9,800.

## CONCLUSION

The appeal is denied in part and sustained in part, for the reasons stated above.

Dated: January 16, 2019

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61802, Appeal of Maruf Sharif Construction Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals